IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RICHARD E. MYERS, JR.,** )<br>)<br>**Plaintiff,** )<br>)<br>vs. )<br>)<br>**BRIAN SHAFFER** in his official and )<br>individual capacities, **BRIAN WOLFE** in his )<br>official and individual capacities, **DAVID** )<br>**NABEREZNY** in his official and individual )<br>capacities, **BRADLEY SMAIL** in his official )<br>and individual capacities, **FNU SNYDER** in )<br>his official and individual capacities, **FNU** )<br>**MCKIZZOP** in his official and individual )<br>Capacities, **DANIEL HERR** in his official and )<br>individual capacities, **JAMES DEPAOLO** )<br>in his official and individual capacities, )<br>**SAMUEL VICARI** in his official and individual )<br>capacities, **RANDALL KRUSE** in his official )<br>and individual capacities, **ANTHONY** )<br>**AULICINO** in his official and individual )<br>capacities, and **THOMAS E. DUBOVI** in his )<br>official and individual capacities, )<br>)<br>**Defendants.** ) | 02:11-cv-01107 |

## MEMORANDUM OPINION AND ORDER OF COURT

May 2, 2012

**I.     Introduction**

Pending before the Court are DEFENDANTS' MOTION TO DISMISS with brief in support (Document Nos. 6 and 7) and Plaintiff's BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS (Document No. 10). The motion is fully briefed and ripe for disposition.

## II.     Background

On August 30, 2011, Plaintiff Richard E. Myers, Jr., filed the instant one-count Complaint against Defendants, all of whom are officers with the Pennsylvania State Police ("PSP") based in Butler County, PA, and all of whom are alleged, individually and in conspiracy with one another, to have violated Plaintiff's constitutional rights under the Fourth and Fourteenth Amendments.

The following background is drawn from the Complaint and, as the law requires, all disputed facts and inferences are resolved in favor of Plaintiff, the non-moving party. The instant case arises from a series of events, the majority of which allegedly occurred over a thirteenth month period from November 29, 2008, to December 9, 2009. Plaintiff alleges that Defendants each committed acts which were designed to harass and deprive him of his constitutional rights.

The alleged conspiracy by Defendants to harass Plaintiff commenced on November 29, 2008,[1] a short while after Plaintiff had confronted Defendant Brian Shaffer about an extramarital relationship Defendant Shaffer was having with Plaintiff's wife, Jacqueline Myers. On that day, at the request of Defendant Shaffer and Jacqueline Myers, "one or more of the Defendants" ordered a "man hunt" for Plaintiff allegedly in "retribution" for an argument that had transpired between Plaintiff and Jacqueline Myers. (Compl. at ¶ 26(a)). Unnamed Defendants located Plaintiff sitting in his car in the parking lot of a Wal-Mart store and he was thereafter taken into custody without probable cause for allegedly possessing a gun in his car. Defendants transported

---

[1] Paragraph 23 of the Complaint specifically states that Plaintiff first confronted Defendant Shaffer in "November 2009" and that it was after this confrontation that Defendants began to harass him. (Compl. at ¶¶ 24, 25). However, the Complaint also reflects that the first incident of harassment occurred in November 2008. (Compl. at ¶ 26(a)). Therefore, the Court will assume that Plaintiff confronted Defendant Shaffer in November 2008, not November 2009.

him to Armstrong County Memorial Hospital, where they "attempted to involuntary commit him on the fabricated reason that he was a threat to himself and others." *Id.* Several of Plaintiff's family members went to the PSP barracks to inform the police that Plaintiff did not possess a gun and was not a threat to himself or others. *Id.* Plaintiff alleges that Defendants willfully ignored this information and continued to harass him.

Next, on December 16, 2008, Plaintiff allegedly called the PSP for assistance because his estranged wife was intentionally damaging his motorcycle. (Compl. at ¶ 26(b)). However, the PSP did not report to the scene nor did they provide Plaintiff with any assistance. Plaintiff speculates that the lack of assistance from the PSP was due to the ongoing relationship between Ms. Myers and Defendant Shaffer. *Id.* In a cursory fashion, Plaintiff alleges that the failure to assist him violated his "rights to equal protection under the law." (Compl. at ¶ 26(b)).

Approximately two weeks later, on January 4, 2009, Plaintiff alleges that he was "viciously attacked and assaulted" by Defendant Shaffer. (Compl. at ¶ 26(c)). Thereafter, Plaintiff alleges that "Defendants" created a false police report to cover up the incident which portrayed Plaintiff in a false light. *Id.* Again, Plaintiff alleges that "this was done in furtherance of Defendants' conspiracy to harass and deprive Plaintiff of his civil rights in retribution for his relationship with Jacqueline Myers and to assist and support Defendant Shaffer in his relationship with Jacqueline Myers." *Id.*

The next day, on or about January 5, 2009, at the direction of Defendant Shaffer, Jacqueline Myers filed a Protection from Abuse ("PFA") order against Plaintiff. (Compl. at ¶ 26(d)). Plaintiff contends that the purpose of the order was to "have Jacqueline Myers granted possession of the marital residence and to enable Defendant Shaffer to occupy the marital residence." *Id.* Further, Plaintiff contends that "Defendant Shaffer used his position of power

3

and authority to obtain the aforementioned restraint on Plaintiff's liberty, thereby further depriving Plaintiff of his constitutional rights as aforementioned, and to further enact retribution against Plaintiff for his relationship with Jacqueline Myers." *Id.*

The PFA hearing was scheduled on February 20, 2009. On that day, Plaintiff went to the district magistrate's office, as did Defendant Shaffer and Jacqueline Myers. Unbeknownst to Plaintiff, the proceeding had been rescheduled for another day. (Compl. at ¶ 26(e)). Upon learning of the rescheduling, Plaintiff left the magistrate judge's office and returned to work without incident. However, on his way home from work that day, Plaintiff received a telephone call in which Defendant Vicardi demanded that Plaintiff come to the PSP barracks for questioning. When Plaintiff arrived at the barracks, he was immediately arrested and charged with violating the temporary PFA order because he had been in the vicinity of Ms. Myers while at the district magistrate's office. The Complaint states that "Defendants attempted to schedule a video arraignment so as to place Plaintiff in custody. However that proved unsuccessful." *Id.* Plaintiff contends that the "entire event was done in furtherance of the Defendants' conspiracy to harass Plaintiff and deprive him of his constitutional rights, since the Defendants were aware that Plaintiff's attendance at the PFA hearing was mandatory." *Id.*

The next month, on March 25, 2009, a Butler County police officer appeared at Plaintiff's work, handcuffed him, and drove him to the county line where Plaintiff was then placed in a PSP vehicle and driven to the Kittanning barracks. (Compl. at ¶ 26(g)). Plaintiff contends that at no time while he was in custody was he informed of the charges against him; however, subsequently, he learned that he had been charged by "one or more of the defendants" with receiving stolen property. *Id.* The Complaint states that "the bringing of these charges by the Defendants was a direct and proximate result of Jacqueline Myers and Defendant Shaffer

4

informing Butler County police that Plaintiff had tools in his garage that were affixed with his employer's identification stamp." *Id.* Plaintiff contends that Ms. Myers and Defendant Shaffer knew or should have known that the tools were rightfully in Plaintiff's possession and were being stored by him on behalf of his employer until "another job started." *Id.*

Two days later, on March 27, 2009, Plaintiff was informed (although he does not state by who) that there was an outstanding bench warrant for his arrest because he had missed an "unspecified hearing" that was scheduled on March 20, 2009. (Compl. at ¶ 26(f)). Plaintiff later learned that the notice of the hearing had not been sent to the proper address. The Complaint alleges that "Defendants once again attempted to bring Plaintiff into custody on a Friday evening so as to hold him over the entire weekend." *Id.*

In June, 2009, Plaintiff was arrested and charged with criminal mischief for vandalizing Defendant Shaffer's automobile while it was parked in the garage of the marital residence of Plaintiff and his estranged wife. (Compl. at ¶ 26(i)). In the Complaint, Plaintiff denies that he caused any damage to the automobile. *Id.*

However, the record reflects that on December 9, 2009, Plaintiff admitted to vandalizing the automobile. On that date, Plaintiff appeared for court and entered into an agreement for his case to be entered into the Accelerated Rehabilitative Disposition ("ARD") program. Plaintiff asserts that he was approached by Defendant Vicari who pressured him into signing a paper in which he admitted that he had vandalized Defendant Shaffer's automobile.[2] Defendant Vicari allegedly threatened that Plaintiff would not be able to enter into the ARD program unless he admitted in writing that he had vandalized the automobile. *Id.* Plaintiff signed the paper and

---

[2] The December 9, 2009 notes specifically states: "I Richard Elwood Myers Jr. agreed to pay for the damages I did to Mr. Brian Shaffer's 1997 Dodge Intrepid. For the sum of $160.54 and did pay for the damages." Signed Richard E. Myers, Jr.

5

thereafter was admitted into a ninety-day ARD program. Plaintiff did not challenge his conviction or ARD sentence.

Finally, throughout "the time period detailed herein," the Complaint states that Defendant Shaffer has harassed and intimidated Plaintiff by using his PSP vehicle and personal automobile to travel to Plaintiff's residence, sit outside Plaintiff's home, travel onto Plaintiff's land, and slowly drive by Plaintiff's property. (Compl. at ¶ 26(k)). No facts are pled in support of this allegation.

### III. Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the legal sufficiency of the complaint. The United States Supreme Court has held that "[a] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (alterations in original).

The Court must accept as true all well-pleaded facts and allegations, and must draw all reasonable inferences therefrom in favor of the plaintiff. However, as the Supreme Court made clear in *Twombly*, the "factual allegations must be enough to raise a right to relief above the speculative level." *Id.* The Supreme Court has subsequently broadened the scope of this requirement, stating that only a complaint that states a ***plausible*** claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937, 1950 (2009) (emphasis added).

Thus, after *Iqbal*, a district court must conduct a two-part analysis when presented with a motion to dismiss for failure to state a claim. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210

6

(3d Cir. 2009). First, the Court must separate the factual and legal elements of the claim. *Id.* Although the Court "must accept all of the complaint's well-pleaded facts as true, [it] may disregard any legal conclusions." *Id*. at 210-211. Second, the Court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Id*. at 211 (citing *Iqbal* 129 S. Ct. at 1949). The determination for "plausibility" will be " 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense'." *Id*. at 211 (quoting *Iqbal* 129 S. Ct. at 1950).

As a result, "pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss." *Id.* at 211. That is, "all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible. This then 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id*. at 210 (quoting *Iqbal*, 129 S. Ct. at 1948).

However, nothing in *Twombly* or *Iqbal* changed the other pleading standards for a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and the requirements of Federal Rule of Civil Procedure 8 must still be met. *See Phillips v. Co. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (internal citations omitted). Fed. R. Civ. P. 8 requires a showing, rather than a blanket assertion, of entitlement to relief, and "contemplates the statement of circumstances, occurrences, and events in support of the claim presented and does not authorize a pleader's bare averment that he wants relief and is entitled to it." *Twombly*, 550 U.S. at 555 n.3 (internal citations and quotations omitted). Additionally, the Supreme Court did not abolish the Rule

12(b)(6) requirement that "the facts must be taken as true and a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on those merits." *Phillips,* 515 F.3d at 231 (citing *Twombly*, 550 U.S. at 553).

In *Santiago v. Warminster Township*, 629 F.3d 121 (3d Cir. 2010) (involving § 1983 claims against supervisory officers and municipality), the Court of Appeals for the Third Circuit described a three-step approach: (1) recitation of the elements of a prima facie case; (2) identification of conclusory allegations that are not entitled to an assumption of truth; and (3) determination of whether the well-pleaded factual allegations plausibly give rise to an entitlement for relief." Id. at 130.

## IV. Legal Analysis

Generally, 42 U.S.C. § 1983 does not create substantive rights, but rather provides a remedy for a violation of rights created by federal law or the Constitution of the United States. 42 U.S.C. § 1983; *City of Okl. City v. Tuttle*, 471 U.S. 808, 816 (1985). 42 U.S.C. § 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ...

To establish a Section 1983 claim, a plaintiff "must demonstrate a violation of a right secured by the Constitution and the laws of the United States [and] that the alleged deprivation [violation of a right] was committed by a person acting under the color of state law." *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir.1996).

Plaintiff contends that Defendants, acting under the color of state law in their capacity as PSP, individually and in conspiracy with one another, violated his constitutional rights under the Fourth and Fourteenth Amendments. (Compl. at ¶¶ 30-32). Defendants argue that the Complaint should be dismissed on the following three grounds: (i) the decision of the United States Supreme Court in *Heck v. Humphrey*, 512 U.S. 477 (1994), bars Plaintiff's claim against Defendant Vicari; (ii) the remaining claims are barred by the applicable two-year statute of limitations; and (iii) the Complaint fails to identify any personal involvement of Defendants Wolfe, Naberezny, Smail, Snyder, McKizzop, Herr, DePaolo, Kruse, Aulicino, and Dubovi. The Court will address these arguments *seriatim*.

A.  <u>Plaintiff's Claim against Defendant Vicari is Barred by *Heck v. Humphrey*</u>

Defendants argue that Plaintiff's claim that Defendant Vicari unlawfully pressured him into admitting that he had committed a crime is barred by the decision of the United States Supreme Court in *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the Supreme Court announced what is known as the "favorable termination rule":

> In order to recover damages for allegedly unconstitutional conviction or imprisonment, <u>or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid</u>, a §1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under §1983.

512 U.S. at 486-87 (emphasis added). The United States Court of Appeals for the Third Circuit has "read *Heck* to mean that if a section 1983 plaintiff seeks to recover damages for an unconstitutional conviction, imprisonment, or other harm caused by actions whose unlawfulness would render the conviction or sentence unlawful, the plaintiff must prove that the conviction or

9

sentence has been reversed, expunged, or declared invalid." *Torres v. McLaughlin*, 163 F.3d 169, 173 (3d Cir. 1998). Further, in *Gilles v. Davis*, our appellate court held that the "ARD program is not a favorable termination under *Heck*. [Plaintiff's] participation in the ARD program bars his § 1983 claim." 427 F.3d 197, 211-12 (3d Cir. 2005).

In the instant case, Plaintiff does not dispute that he participated in theARD program nor does he dispute that he did not challenge his conviction or sentence for criminal mischief, or that his criminal mischief conviction has been reversed, expunged, or declared invalid. Therefore, the Court finds that Plaintiff's claim that Defendant Vicari unconstitutionally pressured him into admitting he had committed a crime is barred under *Heck v. Humphrey*.[3]

B. <u>Plaintiff's Remaining Claims are Barred by the Statute of Limitations</u>

There is no independent statute of limitations for bringing a claim under 42 U.S.C. § 1983 in federal court. Instead, the forum state's statute of limitations for personal injury applies to claims filed under § 1983. *Sameric Corp. of Del., Inc. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir. 1998). Pennsylvania's statute of limitations for personal injury claims is two years. *See* 42 Pa. Cons. Stat. Ann § 5524 (West Supp. 2012). Under federal law, which governs the accrual of § 1983 claims, "the limitations period begins to run from the time when the plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action." *Montgomery v. DeSimone*, 159 F.3d 120, 126 (3d Cir. 1998).

Plaintiff filed his Complaint on August 30, 2011. Therefore, any acts or incidents which occurred prior to August 30, 2009 are barred by the applicable statute of limitations. The only act which clearly falls within the applicable statute of limitations is Plaintiff's claim that on

---

[3] It is important to note that Plaintiff did not address or dispute that *Heck* bars this claim.

December 9, 2009, Defendant Vicari unlawfully pressured him to admit that he had vandalized Defendant Shaffer's vehicle. The Court has previously found that this claim is barred by *Heck v. Humphrey*.

The Complaint also contains an allegation that "[t]hroughout the time period detailed herein, Defendant Shaffer has used his Pennsylvania State Police vehicle and personal vehicle to travel to Plaintiff's residence and sit outside his property, travel onto his property and slowly travel by his property in an attempt to intimidate, harass and otherwise deprive Plaintiff of his constitutional rights." (Compl. at ¶ 26(k)). However, no specific dates or times are given for this conduct and the Complaint fails to allege any facts to support this claim.[4] Without a time frame more specific than "throughout the time period detailed herein," the Court is not able find that this claim against Defendant Shaffer falls within the two-year statute of limitations period.

The remaining events identified in Plaintiff's Complaint all clearly occurred prior to August 30, 2009. Accordingly, the Court finds that Plaintiff has alleged no viable claims that are within the applicable statute of limitations.

C.  The Continuing Violations Doctrine

Plaintiff concedes that only two acts occurred within the applicable statute of limitations, *to wit*, Defendant Vicari allegedly pressuring him to admit he vandalized Defendant Shaffer's vehicle and the "continual harassment by Defendant Shaffer." *See* Plaintiff's Brief at 3. However, Plaintiff argues that the continuing violations doctrine saves his remaining claims.

---

[4] In Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss, Plaintiff states that Defendant Shaffer has engaged in "continual harassment," but this is not alleged in the Complaint.

The continuing violations doctrine is most frequently applied in employment discrimination cases, but it also may be used to bring a § 1983 claim. *Cowell v. Palmer Tp.,* 263 F.3d 286, 292 (3d Cir. 2001). The continuing violations doctrine is an "equitable exception to the timely filing requirement." *Id.* However, it is a narrow exception and "should not provide a means for relieving [Plaintiff] from [his] duty to exercise reasonable diligence in pursuing his claims." *Id.* at 295. "[I]f the prior events should have alerted a reasonable person to act at that time, the continuing violation theory will not overcome the relevant statute of limitations." *King v. Township of E. Lampeter*, 17 F. Supp. 2d 394, 416 (E.D. Pa. 1998), *aff'd*, 182 F.3d 903 (3d Cir. 1999). In order to benefit from the doctrine, "a plaintiff must establish that the defendant's conduct is "more than the occurrence of isolated or sporadic acts." *Cowell*, 263 F.3d at 292 (quoting *West*, 45 F.3d at 755).

"'Discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discriminatory act starts a new clock for filing charges alleging that act.' The latter can occur at any time so long as they are linked in a pattern of actions which continues into the applicable limitations period." *O'Connor v City of Newark*, 440 F.3d 125,127 (3d Cir. 2006) (quoting *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101,105 (2002)).

Fatal to Plaintiff's argument is that he has no claims which fall within the applicable statute of limitations period. However, assuming *arguendo* that Plaintiff has at least one viable claim which arose during the applicable statute of limitations period, the Court finds that the continuing violations doctrine simply does not save Plaintiff's remaining claims. Each of the alleged incidents arose from a discrete, discriminatory act that should have triggered Plaintiff's awareness of a duty to assert his rights. "[T]he continuing violations doctrine should not provide

a means for relieving plaintiffs from their duty to exercise reasonable diligence in pursuing their claims . . . limitation periods are intended to put defendants on notice of adverse claims and to prevent plaintiffs from sleeping on their rights." *Cowell*, 263 F.3d at 295. Accordingly, the Court finds that the continuing violations doctrine does not save Plaintiff's claims as every incident which Plaintiff lists is a discrete act, which, if actionable, was separately actionable at the time the act was completed.

D.  The Complaint Fails to State the Personal Involvement of Ten Named Defendants

Assuming, *arguendo*, that any of Plaintiff's claims are viable, the final issue to be addressed is whether Plaintiff has alleged sufficient facts to establish liability against Defendants Wolfe, Naberezny, Smail, Snyder, McKizzop, Herr, DePaolo, Kruse, Aulicino, and Dubovi.

Liability under section 1983 arises only upon a showing of personal participation by a defendant. The Court finds that the Complaint has failed to allege any facts as to how these defendants were involved in any of the conduct of which Plaintiff complains. There is no allegation that these defendants engaged in, directed, or authorized such conduct. In fact, their names are not mentioned in the Complaint. Accordingly, the Court finds and rules that the motion to dismiss should be granted and Defendants Wolfe, Naberezny, Smail, Snyder, McKizzop, Herr, DePaolo, Kruse, Aulicino, and Dubovi will be dismissed.

E.  Leave to Amend the Complaint

If a civil rights complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile. *Alston v. Parker,* 363 F.3d 229, 235 (3d Cir. 2004). A district court must provide the plaintiff with this

opportunity even if the plaintiff does not seek leave to amend. *Id. But see Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007) (in non-civil rights cases, a plaintiff must seek leave to amend and submit a draft of an amended complaint).

Accordingly, Plaintiff will be granted leave to amend his Complaint if he so chooses. However, the Court cautions that if Plaintiff chooses to file an amended complaint, it will be important to address all of the alleged shortcomings to assure that the amended complaint contains sufficient factual allegations to render the claim(s) "plausible" in compliance with the pleading standard set forth and explained in *Twombly*, *Fowler,* and *Phillips,* as a further opportunity to amend is unlikely to be granted.

## V. Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiff's Complaint will be **GRANTED**. Plaintiff will be granted the right to file an amended complaint if he so chooses.

An appropriate Order follows.

McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RICHARD E. MYERS, JR.,** )<br>)<br>**Plaintiff,** )<br>)<br>vs. )<br>)<br>**BRIAN SHAFFER** in his official and )<br>individual capacities, **BRIAN WOLFE** in his )<br>official and individual capacities, **DAVID** )<br>**NABEREZNY** in his official and individual )<br>capacities, **BRADLEY SMAIL** in his official )<br>and individual capacities, **FNU SNYDER** in )<br>his official and individual capacities, **FNU** )<br>**MCKIZZOP** in his official and individual )<br>Capacities, **DANIEL HERR** in his official and )<br>individual capacities, **JAMES DEPAOLO** )<br>in his official and individual capacities, )<br>**SAMUEL VICARI** in his official and individual )<br>capacities, **RANDALL KRUSE** in his official )<br>and individual capacities, **ANTHONY** )<br>**AULICINO** in his official and individual )<br>capacities, and **THOMAS E. DUBOVI** in his )<br>official and individual capacities )<br>)<br>**Defendants.** | **02:11-cv-01107** |

## ORDER OF THE COURT

AND NOW, this 2nd day of May, 2012, for the reasons set forth in the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED and DECREED** that the Motion to Dismiss filed by Defendants is **GRANTED**.

It is further **ORDERED** that on or before May 16, 2012, Plaintiff may file an Amended Complaint to correct the noted deficiencies in his original Complaint, or file a notice of intent to stand on the existing Complaint.

                                                          BY THE COURT:

                                                          s/ Terrence F. McVerry
                                                          United States District Court Judge

cc: Jonathan M. Gesk, Esquire
Wayman, Irvin & McAuley
jgesk@waymanlaw.com

Joel S. Sansone, Esquire
Scanlon & Sansone
Email: joelsansone03@msn.com

Robert A. Willig,
Senior Deputy Attorney General
Email: rwillig@attorneygeneral.gov