**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **RICHARD E. MYERS, JR.,**         ) | |
|                        ) | |
|         **Plaintiff,**          ) | |
|                        ) | **02:11-cv-01107** |
|       **vs.**                  ) | |

**RICHARD E. MYERS, JR.,** )

         )

        **Plaintiff,** )

         )      **02:11-cv-01107**

     **vs.** )

         )

**BRIAN SHAFFER in his official and** )
**individual capacities, BRIAN WOLFE in his** )
**official and individual capacities,** )
**BRADLEY SMAIL in his official** )
**and individual capacities, DANIEL HERR in** )
**his official and individual capacities,** )
**JAMES DEPAOLO  in his official and** )
**individual capacities, SAMUEL VICARI** )
**in his official and individual capacities, and** )
**ANTHONY AULICINO in his official** )
**and individual capacities,** )
         )
        **Defendants.** )

## <u>MEMORANDUM OPINION AND ORDER OF COURT</u>

August 21, 2012

### I.     **Introduction**

      Pending before the Court are DEFENDANTS' MOTION TO DISMISS with brief in support (Document Nos. 17 and 18)  and Plaintiff's BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS (Document No. 21).  The motion is fully briefed and ripe for disposition.

### II.     **Procedural  Background**

       On August 31, 2011, Plaintiff Richard E. Myers, Jr., initiated this lawsuit by the filing of a one-count Complaint against twelve (12) defendants, all of whom were Pennsylvania State

Police ("PSP") officers based in Butler County, PA, who were alleged, individually and in conspiracy with one another, to have violated Plaintiff's constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution.

Defendants filed a motion to dismiss, which this Court granted on May 2, 2012.  The Court also permitted Plaintiff leave to file an amended complaint.  On May 17, 2012, Plaintiff filed the instant one-count Amended Complaint, the majority of which raises the same issues as raised in the original Complaint.  However, in the Amended Complaint, Plaintiff dropped five (5) defendants who had been named in the original Complaint[1] and now brings his claims only under the Fourth Amendment of the United States Constitution. Additionally, the Amended Complaint adds new factual allegations, which include incidents that allegedly occurred between September 2010 and July 5, 2011.

Defendants timely filed the instant motion to dismiss the Amended Complaint and argue, in essence, that Plaintiff has raised the same issues as those in the original complaint and that the new factual allegations do not save his untimely claims from the statute of limitations.

**III.  Factual Background**

The following background is drawn from the Amended Complaint and, as the law requires, all disputed facts and inferences are resolved in favor of Plaintiff, the non-moving party.  The Amended Complaint retains most of the same incidents cited in the original Complaint, which allegedly occurred between November 29, 2008 and December 9, 2009, plus new factual allegations, which includes incidents that allegedly occurred between September 2010 and July 5, 2011  Additionally, the Amended Complaint identifies the personal

---

[1] Plaintiff did not name Defendants Naberezny, Snyder, McKizzop, Kruse, and Dubovi in the Amended Complaint, although they were named in the original complaint.

involvement of Defendants Wolfe, Smail, Herr, DePaolo, and Aulicino. The Amended

Complaint states that all of the Defendants committed acts which were designed to harass and

deprive Plaintiff of his constitutional rights under the Fourth Amendment.

The alleged conspiracy by Defendants commenced on November 29, 2008,[2] shortly after

Plaintiff had confronted Defendant Brian Shaffer about an extramarital relationship Defendant

Shaffer was having with Plaintiff's wife, Jacqueline Myers.   On that day, at the request of

Defendant Shaffer and Jacqueline Myers, "one or more unidentified Pennsylvania State Police"

ordered a "man hunt" for Plaintiff allegedly in "retribution" for an argument that had transpired

between Plaintiff and Jacqueline Myers.  (Amend. Compl. at ¶ 20(a)).  "The Pennsylvania State

Police" located Plaintiff sitting in his car in the parking lot of a Wal-Mart store  and he was

thereafter taken into custody for having allegedly possessed a gun in his car.  Defendants

transported him to Armstrong County Memorial Hospital, where they "attempted to involuntary

commit him on the fabricated reason that he was a threat to himself and others." *Id.*  Several of

Plaintiff's family members went to the PSP barracks to inform the police that Plaintiff did not

possess a gun and was not a threat to himself or others.  *Id.*  Plaintiff alleges that Defendants

willfully ignored this information and continued to harass him.

Next, on December 16, 2008, Plaintiff allegedly called the PSP for assistance because his

estranged wife was intentionally damaging his motorcycle.  (Amend. Compl. at ¶ 20(b)).

However, the PSP did not report to the scene nor did they provide Plaintiff with any assistance.

---

[2] Paragraph 17 of the Amended Complaint states that Plaintiff originally contacted Defendant Shaffer in "November 2009," and that from this date forward, Defendants began to harass him. (Amend. Compl. at ¶ 18-19).   Yet, the Amended Complaint indicates that the first alleged incident of harassment occurred on November 29, 2008.  (Amend. Compl. at ¶ 20(a)).  Thus, the Court will assume that Plaintiff first confronted Defendant Shaffer in November 2008.

Plaintiff speculates that the lack of assistance from the PSP was due to the ongoing relationship between Ms. Myers and Defendant Shaffer.  *Id.*

Approximately two weeks later, on January 4, 2009, Plaintiff alleges that he was "viciously attacked and assaulted" by Defendant Shaffer.  (Amend. Compl. at ¶ 20(c)).  Thereafter, Plaintiff alleges that Defendant Smail and Depaolo created a false police report which portrayed Plaintiff in a false light to cover up the incident.  *Id.*  Again, Plaintiff alleges that "this was done in furtherance of Defendants' conspiracy to harass and deprive Plaintiff of his civil rights in retribution for his relationship with Jacqueline Myers and to assist and support Defendant Shaffer in his relationship with Jacqueline Myers."  *Id.*

The next day, on or about January 5, 2009, allegedly at the direction of Defendant Shaffer, Jacqueline Myers filed a Protection from Abuse ("PFA") order against Plaintiff.  (Amend. Compl. at ¶ 20(d)).  Plaintiff contends that the purpose of the order was to allow Jacqueline Myers possession of the marital residence "and to enable Defendant Shaffer to occupy the marital residence." *Id.*  Further, Plaintiff contends that "Defendant Shaffer used his position of power and authority to obtain the aforementioned restraint on Plaintiff's liberty, thereby further depriving Plaintiff of his constitutional rights as aforementioned, and to further enact retribution against Plaintiff for his relationship with Jacqueline Myers." *Id.*

The PFA hearing was scheduled on February 20, 2009.  On that day, Plaintiff went to the district magistrate's office, as did Defendant Shaffer and Jacqueline Myers.  Unbeknownst to Plaintiff, the hearing had been rescheduled for a later date.  (Amend. Compl. at ¶ 20(e)).  Upon learning of the rescheduling, Plaintiff left the magistrate judge's office and returned to work without incident. *Id.*  However, on his way home from work that day, Plaintiff received a telephone call in which Defendant Vicari demanded that Plaintiff come to the PSP barracks for

questioning.  *Id.*  When Plaintiff arrived at the barracks, he was immediately arrested and charged with violating the temporary PFA order because he had been in the vicinity of Ms. Myers while at the district magistrate's office.  *Id.*  The Amended Complaint states that "Defendants attempted to schedule a video arraignment so as to place Plaintiff in custody. However that proved unsuccessful."  *Id.*  Plaintiff contends that the "entire event was done in furtherance of the Defendants' conspiracy to harass Plaintiff and deprive him of his constitutional rights, since the Defendants were aware that Plaintiff's attendance at the PFA hearing was mandatory."  *Id.*

The next month, on March 25, 2009, a Butler County police officer appeared at Plaintiff's work, handcuffed him, and drove him to the county line where Plaintiff was then placed in a PSP vehicle and driven to the Kittanning barracks.  (Amend. Compl. at ¶ 20(f)). Plaintiff contends that at no time while he was in custody was he informed of the charges against him; however, subsequently, he learned from Defendant Wolfe, that he had been charged with receiving stolen property.  *Id.*  The Amended Complaint states that "the bringing of these charges by the Defendants was a direct and proximate result of Jacqueline Myers and Defendant Shaffer informing Butler County police that Plaintiff had tools in his garage that were affixed with his employer's identification stamp."  *Id.*  Plaintiff contends that Ms. Myers and Defendant Shaffer knew or should have known that the tools were rightfully in Plaintiff's possession and were being stored by him on behalf of his employer until "another job started."  *Id.*

In June, 2009, Defendant Vicari arrested and charged Plaintiff with criminal mischief for vandalizing Defendant Shaffer's automobile while it was parked in the garage of the marital residence of Plaintiff and his estranged wife.  (Amend. Compl. at ¶ 20(h)).  In the Amended Complaint, Plaintiff denies that he caused any damage to the automobile.  *Id.*

However, the record reflects that on December 9, 2009, Plaintiff admitted to vandalizing the automobile. (Amend. Compl. at ¶ 20(i)). On that date, Plaintiff appeared for court and entered into an agreement for his case to be entered into the Accelerated Rehabilitative Disposition ("ARD") program. Plaintiff asserts that Defendant Vicari pressured him into signing a paper in which he admitted that he had vandalized Defendant Shaffer's automobile.[3] Defendant Vicari allegedly threatened that Plaintiff would not be able to enter into the ARD program unless he admitted in writing that he had vandalized the automobile. *Id.* Plaintiff signed the paper and thereafter was admitted into a ninety-day ARD program. Plaintiff did not challenge his conviction or ARD sentence.

In September 2010, pursuant to a court order, Plaintiff and his son, Travis Myers, were permitted to retrieve their personal belongings from the martial residence, where Jacqueline Myers was residing at the time. (Amend. Compl. at ¶ 20(j)). On October 6, 2010, after Plaintiff's son had gone to Jacqueline Myer's residence to retrieve his belongings, Plaintiff received a call from Defendant Aulicino, "advising Plaintiff that he needed to talk with Travis regarding a burglary" and "advised" Plaintiff to bring his son to the PSP barracks to clear up the matter. *Id.*

On October 7, 2010, Plaintiff brought Travis to the PSP barracks, where his son was "interrogated, harassed, and repeatedly called a 'liar'" by Defendants Aulicino and Herr. *Id.* Plaintiff further alleges that when he and Travis tried to leave, Defendants Aulicino and Herr instructed Plaintiff that he could not do so, as the officers had a warrant for his arrest, which stemmed from a citation issued to Plaintiff for operating a motorcycle with a minor-passenger who was not wearing a helmet. (Amend. Compl. at ¶ 20(k)). In a cursory fashion, Plaintiff

---

[3] The December 9, 2009 notes specifically states: "I Richard Elwood Myers Jr. agreed to pay for the damages I did to Mr. Brian Shaffer's 1997 Dodge Intrepid. For the sum of $160.54 and did pay for the damages." Signed Richard E. Myers, Jr.

alleges that the warrant was flawed because the citation was issued solely on the basis of Jacqueline Myer's eyewitness testimony. *Id.*

The Amended Complaint further states that on December 29, 2010, the charges stemming from the citation issued to him for operating a motorcycle with a minor passenger that was not wearing a helmet were dismissed, as Jacqueline Myers and the PSP did not pursue the charges nor provide any evidence of the violation. (Amend. Compl. at ¶ 20(l)).   Plaintiff claims that this entire incident occurred solely to harass and intimidate him, while further depriving him of his constitutional rights. *Id.*

In January 2011, Plaintiff claims that he reported to the PSP a smashed window in his house and stolen belongings, but that the PSP advised him that "they would not be sending any assistance as one or more of the Defendants believed it was Jacqueline Myers who had burglarized the property." (Amend. Compl. ¶ at 20(m)).   Plaintiff asserts that this event was a clear violation of his constitutional rights and his right to equal protection under the law, and that the PSP's failure to assist him was a result of the ongoing relationship between Jacqueline Myers and Defendant Shaffer.

Finally, Plaintiff alleges that during "the time period detailed herein," Defendant Shaffer has harassed and intimidated Plaintiff by using his PSP vehicle and personal automobile to travel to Plaintiff's residence, sit outside Plaintiff's home, travel onto Plaintiff's land, and slowly drive by Plaintiff's property. (Amend. Compl. ¶ at 20(n)).   Plaintiff has included two instances of such occurrences, but does not provide a specific date for either.   For example, in May 2011, Travis Myers witnessed Defendant Shaffer get out of his "personal vehicle" and allegedly enter onto Plaintiff's property.   Defendant Shaffer proceeded to "inspect the property and even walk up to Plaintiff's residence." (Amend. Compl. at ¶ 20(n)(1)).   Plaintiff claims that this "unlawful

trespassing" was done for the sole purpose of depriving him of his constitutional rights.  *Id.*  A second occurrence happened between June 28, 2011 and July 5, 2011, when Jack Zubick informed Plaintiff that "a PSP vehicle was traveling back and forth very slowly by Plaintiff's property."  (Amend. Compl. at ¶ 20(n)(2)).  A few days later, Zubick reported to Plaintiff that he saw the same thing happen at another location where Plaintiff owned property.


### III.    Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the legal sufficiency of the complaint.  The United States Supreme Court has held that "[a] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (alterations in original).

The Court must accept as true all well-pleaded facts and allegations, and must draw all reasonable inferences therefrom in favor of the plaintiff.  However, as the Supreme Court made clear in *Twombly*, the "factual allegations must be enough to raise a right to relief above the speculative level."  *Id.*  The Supreme Court has subsequently broadened the scope of this requirement, stating that only a complaint that states a ***plausible*** claim for relief survives a motion to dismiss."  *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937, 1950 (2009) (emphasis added).

Thus, after *Iqbal*, a district court must conduct a two-part analysis when presented with a motion to dismiss for failure to state a claim.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  First, the Court must separate the factual and legal elements of the claim.  *Id.* Although the Court "must accept all of the complaint's well-pleaded facts as true, [it] may

disregard any legal conclusions." *Id*. at 210-211.  Second, the Court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'  In other words, a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to 'show' such an entitlement with its facts." *Id*. at 211 (citing *Iqbal* 129 S. Ct. at 1949).  The determination for "plausibility" will be " 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense'." *Id*. at 211 (quoting *Iqbal* 129 S. Ct. at 1950).

As a result, "pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss." *Id.* at 211.  That is, "all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible.  This then 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id*. at 210 (quoting *Iqbal*, 129 S. Ct. at 1948).

However, nothing in *Twombly* or *Iqbal* changed the other pleading standards for a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and the requirements of Federal Rule of Civil Procedure 8 must still be met.  *See Phillips v. Co. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (internal citations omitted).  Fed. R. Civ. P. 8 requires a showing, rather than a blanket assertion, of entitlement to relief, and "contemplates the statement of circumstances, occurrences, and events in support of the claim presented and does not authorize a pleader's bare averment that he wants relief and is entitled to it." *Twombly*, 550 U.S. at 555 n.3 (internal citations and quotations omitted).  Additionally, the Supreme Court did not abolish the Rule 12(b)(6) requirement that "the facts must be taken as true and a complaint may not be dismissed

merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on those merits." *Phillips,* 515 F.3d at 231 (citing *Twombly*, 550 U.S. at 553).

Recently, the Court of Appeals for the Third Circuit expounded on the *Twombly / Iqbal* line of cases and explained that a court must follow a three-step approach when determining the sufficiency of a complaint:  "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'  Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (*quoting Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)).

## IV.    Legal Analysis

Generally, 42 U.S.C. § 1983 does not create substantive rights, but rather provides a remedy for a violation of rights created by federal law or the Constitution of the United States. 42 U.S.C. § 1983; *City of Okl. City v. Tuttle*, 471 U.S. 808, 816 (1985).  42 U.S.C. § 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

To establish a Section 1983 claim, a plaintiff "must demonstrate a violation of a right secured by the Constitution and the laws of the United States [and] that the alleged deprivation [violation of

a right] was committed by a person acting under the color of state law." *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir.1996).

Plaintiff contends that Defendants, acting under the color of state law in their capacity as PSP, individually and in conspiracy with one another, violated his constitutional rights under the Fourth Amendment. (Amend. Compl. at ¶¶ 24-26). Defendants argue that the Amended Complaint should be dismissed for the following reasons: (i) the allegations of conduct that occurred within the statute of limitations do not constitute valid Fourth Amendment claims; and (ii) any alleged constitutional violation that occurred prior to August 31, 2009 is barred by the statute of limitations.

A. *The Allegations of Conduct that Occurred Within The Statute of Limitations Do Not Constitute Valid Cognizable Fourth Amendment Claims*

The parties agree that there is a two-year statute of limitations for the claims set forth in the Amended Complaint. *Sameric Corp. of Del., Inc. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir. 1998). The accrual date is the date when the two-year statute of limitations begins to run. Assessing the accrual date of a § 1983 cause of action is a question of federal law. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). The accrual date is the date when Plaintiff knew or should have known that his constitutional rights were violated.

Plaintiff filed his original Complaint on August 31, 2011; therefore, the applicable statute of limitations period in this case runs from August 31, 2009 to August 31, 2011.

Defendants argue that none of Plaintiff's allegations of conduct that occurred within the statute of limitations period state a cognizable cause of action under the Fourth Amendment. The Court will address each such allegation seriatim.

1.      The ARD Hearing on December 9, 2009[4]

Plaintiff contends that, while attending an ARD hearing on December 9, 2009, Defendant Vicari "pressured" him to sign a paper in which he admitted that he had vandalized Defendant Shaffer's automobile.  Defendants argue that Plaintiff's contention is barred by the "favorable termination rule," established by the United States Supreme Court in *Heck v. Humphrey*, 512 U.S. 477 (1994).  In *Heck*, the Supreme Court announced:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a §1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under §1983.

512 U.S. at 486-87  (emphasis added).  The United States Court of Appeals for the Third Circuit has "read *Heck* to mean that if a section 1983 plaintiff seeks to recover damages for an unconstitutional conviction, imprisonment, or other harm caused by actions whose unlawfulness would render the conviction or sentence unlawful, the plaintiff must prove that the conviction or sentence has been reversed, expunged, or declared invalid." *Torres v. McLaughlin*, 163 F.3d 169, 173 (3d Cir. 1998).  Further, in *Gilles v. Davis*, our appellate court held that the "ARD program is not a favorable termination under *Heck*.  [Plaintiff's] participation in the ARD program bars his § 1983 claim."  427 F.3d 197,  211-12 (3d Cir. 2005).

In the instant case, Plaintiff does not dispute that he participated in the ARD program nor does he dispute that he did not challenge his conviction or sentence for criminal mischief, or that his criminal mischief  conviction has been reversed, expunged, or declared invalid.  Therefore,

---

[4] The Court notes that this exact claim was fully analyzed and rejected by the Court in its Memorandum Opinion and Order which granted Defendants' first motion to dismiss.

the Court finds that Plaintiff's claim that Defendant Vicari unconstitutionally pressured him into admitting that he had committed a crime is barred under *Heck v. Humphrey*.[5]

2.      The Questioning of Travis Harris on October 7, 2010

The Court next addresses Plaintiff's claims which stem from the questioning by Defendants Aulicino and Herr of Plaintiff's son, Travis Myers, at the PSP barracks on October 7, 2010.  First, Plaintiff claims that the PSP treated his son's visit to the marital residence as a potential burglary in order to "harass Plaintiff and deprive him of his constitutional right to liberty and happiness, or at least the pursuit thereof."  Pl's Br. at 7.  The problem, however, with this allegation is that it does not "plausibly give rise to an entitlement to relief," as Plaintiff has not identified how the questioning of his son violated Plaintiff's personal rights under the Fourth Amendment.  *See Iqbal*, 129 S. Ct. at 1950.

Second, Plaintiff alleges that by "inducing" him to appear at the PSP barracks with Travis on October 7, 2010, the actions of Defendants Aulicino and Herr constituted an unreasonable seizure and violated Plaintiff's constitutional rights.  Pl's Br. at 7.  The Court finds that this bald assertion borders on frivolous.

The Supreme Court has determined, within the meaning of the Fourth Amendment, that an unreasonable seizure occurs only when "a reasonable person would have believed that he was not free to leave."  *U.S. v. Mendenhall*, 446 U.S. 544, 545 (1980).  Additionally, to determine whether a seizure has occurred, the officer must, by means of physical force or show of authority, restrain a citizen's liberty.  *See Terry v. Ohio*, 392 U.S. 1, 16 (1968).

---

[5] It is important to note that in his brief in opposition, Plaintiff did not address or dispute that *Heck* bars this claim.

At this stage of litigation, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level" and the complaining party must offer "more than labels and conclusions." *Twombly*, 550 U.S. at 555. The Court is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevy*, 481 F.3d 187, 195 (3d Cir. 2007) (internal quotations and citations omitted.)

Although Plaintiff contends that he was subjected to an unreasonable seizure, he plainly states within his Amended Complaint that he voluntarily went to the PSP barracks after receiving Defendant Aulicino's October 6, 2010 phone call, "advising" Plaintiff that he needed to talk with Travis. Thus, the Court concludes and rules that Plaintiff's voluntary presence at the PSP barracks on October 7, 2010, does not constitute an unreasonable seizure under the Fourth Amendment.

3.      The Detention of Plaintiff on October 7, 2010

As Plaintiff was attempting to leave the PSP barracks "[a]fter approximately one-and-a-half hours of [ ] interrogation and harassment," he was instructed by Defendants Aulicino and Herr that he could not leave because a warrant had been issued for his arrest for operating a motorcycle with a minor-passenger who was not wearing a helmet. In the Amended Complaint, Plaintiff concedes that on October 4, 2010, a warrant had, in fact, been issued for his arrest for a violation of 75 Pa.C.S. § 3535. Yet, Plaintiff arrives at his own legal conclusion and deems the warrant flawed, as it is based only on the eyewitness testimony of Jacqueline Myers, "an unreliable and prejudiced witness" and, thus, Defendants "had no probable cause" to make the arrest. Pl's Br. at 8-9. The Court finds Plaintiff's contention to be severely flawed.

It is true that "the Fourth Amendment prohibits arrests without probable cause," *Walker v. West Cain Township*, 170 F. Supp. 2d 522, 526 (E.D. Pa. 2001), however, when a person "is named in a bench warrant, probable cause for arrest exists, and any Fourth Amendment argument arising out of the arrest is without merit even if the bench warrant later turns out to be invalid." *Hanks v. County of Delaware*, 518 F. Supp. 2d 642, 649 (E.D. Pa. 2007); *see also United States v. Spencer*, 684 F.2d 220, 223 (2d Cir. 1982) (a bench warrant is the judicial equivalent to probable cause).

In support of his position, Plaintiff relies upon the decision in *Ankele v. Hambrick*, 2003 U.S. Dist. WL 21223821 (E.D. Pa.) *aff'd,* 136 F. App'x 551 (3d Cir. 2005). However, the Court finds that Plaintiff's reliance upon this case is misplaced as the factual scenario in *Ankele* greatly differs from that of the instant case. The primary issue in *Ankele* was whether a state trooper, who neither witnessed nor investigated an automobile accident and had <u>not</u> obtained a warrant, had probable cause to arrest and charge one of the drivers. *Id.*

Plaintiff's contention that the PSP did not have probable cause to arrest him is without merit, as Defendants Aulicino and Herr were acting under the authority of a warrant. Thus, the Court finds that this claim also fails to articulate a legally cognizable claim under the Fourth Amendment.

4.     The Refusal to Send Officers on January 2011

Plaintiff contends that the PSP's refusal to send assistance to his home in January 2011, violated his right to equal protection of the law. The Court finds that there are two fundamental flaws with this claim. First, the Amended Complaint specifically states that the dispute "arises under the Constitution, laws, or treaties of the United States, namely 42 U.S.C. § 1983 and the

Fourth Amendment of the United States Constitition."  Amended Complaint, ¶ 1 (emphasis added).  The Amended Complaint is devoid of any reference that claims are being asserted under the Equal Protection Clause of the Fourteenth Amendment.[6]

Second, in order to state a valid § 1983 claim, a plaintiff must demonstrate the Defendant's "personal involvement in the alleged wrongs[.]"  *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Alexander v. Fritch*, 396 F. App'x 867, 874 (3d Cir. 2010) ("Individual liability can be imposed under § 1983 only if the defendant played an 'affirmative part' in the alleged misconduct.")  In *Rode*, the appellate court further clarified that, " [p]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence," and that such "must be made with appropriate particularity."  845 F.2d at 1207.

The Amended Complaint fails to identify the personal involvement of any of the named Defendants, but rather merely refers to the PSP and "one or more of the Defendants."  Also,  the Amended Complaint does not specify when this event occurred, but rather states generally that the alleged incident occurred "[i]n January 2011."  For all these reasons, the Court finds that Paragraph 20(m) of the Amended Complaint fails to state a cognizable violation of Plaintiff's constitutional rights.

 

5.    The Alleged Conduct of Defendant Shaffer Which Occurred in May 2011

Plaintiff alleges that Defendant Shaffer has used his police and personal vehicle to travel by and onto Plaintiff's property, in order to further deprive him of his constitutional rights.

---

[6] In what may be an effort to correct this apparent oversight, Plaintiff has attached a proposed Second Amended Complaint, in which he clearly states that his claims are also being brought under the Equal Protection Clause of the Fourteenth Amendment.  The proposed Second Amended Complaint is addressed *infra*.

Plaintiff supports this claim with two separate incidents, and asserts that the first constituted an unreasonable search.

An individual's protection against unreasonable searches under the Fourth Amendment extends primarily to "persons, houses, papers and effects." *Hester v. U. S.*, 265 U.S. 57 (1924). The determination of an unreasonable search has been considered twofold and takes into account whether one has a subjective expectation of privacy and if that expectation is one that society would deem reasonable. *See Katz v. U. S.*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring) ("[A] man's home is . . . a place where he expects privacy, but objects . . . that he exposes to the 'plain view' of outsiders are not 'protected.'") The Supreme Court has further recognized that the Fourth Amendment also "protects the curtilage of a house and that the extent of the curtilage is determined by factors that bear upon whether an individual reasonably may expect that the area in question should be treated as the home itself." *U. S. v. Dunn*, 480 U.S. 294, 300 (1987) (citing *Oliver v. United States*, 466 U.S. 170, 180 (1984)).

Moreover, in order to sufficiently plead a § 1983 claim, a plaintiff must allege that the defendant who deprived him of his constitutionally protected rights did so while acting under the color of state law. *See Kneipp*, 95 F.3d at 1204. The "color of state law" has been defined within the context of a § 1983 claim as a "[m]isuse of power, possessed by virtue of state law and made possible *only* because the wrongdoer is clothed with the authority of state law." *U.S. v. Classic*, 313 U.S. 299, 326 (1946). Our appeals court has found that " [i]f an individual is possessed of state authority and purports to act under that authority, his action is state action. It is irrelevant that he might have taken the same action had he acted in a purely private capacity." However, the appeals court has further indicated that "a police officer's purely private acts which are not furthered by any actual or purported state authority" cannot be considered as committed

under color of state law.  *Barna v. City of Perth Amboy*, 42 F.3d 809, 816 (3d Cir. 1994); *see also Showalter v. Brubaker*, 493 F. Supp. 2d 752, 755 (E.D. Pa. 2007) *aff'd,* 283 F. App'x 33 (3d Cir. 2008).

Plaintiff contends that the actions of Defendant Shaffer, as allegedly witnessed by Travis Myers on an unspecified date in May 2011, amount to a deprivation of his constitutional rights. The Court finds this contention to be without merit.  Defendant Shaffer's mere presence on Plaintiff's property and approach toward his residence cannot plausibly be suggested to be an unreasonable search of the house, or its curtilage, under the Fourth Amendment.   Likewise, the Amended Complaint reflects no allegation that on that unspecified date in May 2011 Defendant Shaffer was on-duty or otherwise acting under the color of state law.  Rather, the Amended Complaint specifically states that Defendant Shaffer was his "personal vehicle."

As to the second instance, Plaintiff again does not provide a specific date of the conduct, but rather describes a range within seven days.  At the outset, Plaintiff cannot argue that the existence of a police vehicle traveling by one's property creates, in any manner, a violation of one's constitutional rights.  Second, Plaintiff fails to assert that Defendant Shaffer, or any of the named Defendants for that matter, was in a police vehicle at the time it was seen traveling by Plaintiff's residence.  The Court finds this allegation to be wholly meritless.

In sum, Plaintiff has failed to demonstrate a valid cause of action under the Fourth Amendment for any of the alleged conduct that occurred within the applicable statute of limitations period.

*B.  The Allegations of Conduct That Occurred Prior to August 31, 2009 Are Barred By The Statute of Limitations.*

Plaintiff concedes that many of his claims do not fall within the applicable statute of limitations, but argues that the continuing violations doctrine applies to all the conduct set forth in his Amended Complaint.  He contends that the time-barred claims are salvaged because those allegations which fall within the statute of limitations are sufficient claims of civil rights violations, and because the total conduct creates a pattern and system of deprivation of Plaintiff's constitutional rights.

The continuing violations doctrine is most frequently applied in employment discrimination cases, but it may also be used to bring a § 1983 claim.  *Cowell v. Palmer Twp.,* 263 F.3d 286, 292 (3d Cir. 2001).   Under the continuing violations doctrine, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred."  *Id.* at  292 (emphasis added).  To achieve the protection of the continuing violations doctrine, a plaintiff must show that the defendant's conduct is part of a continuing practice and is more than the occurrence of isolated or sporadic acts.  *Rush v. Scott Specialty Gases, Inc.,* 113 F.3d 476, 481 (3d Cir. 1977).

The continuing violations doctrine is an "equitable exception to the timely filing requirement."  *Id.*  However, it is a narrow exception and "should not provide a means for relieving [Plaintiff] from [his] duty to exercise reasonable diligence in pursuing his claims."  *Id.* at 295.  "[I]f the prior events should have alerted a reasonable person to act at that time, the continuing violations theory will not overcome the relevant statute of limitations."  *King v.*

*Township of E. Lampeter*, 17 F. Supp. 2d 394, 416 (E.D. Pa. 1998), *aff'd*, 182 F.3d 903 (3d Cir. 1999).

"Discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.  Each discriminatory act starts a new clock for filing charges alleging that act.'  The latter can occur at any time so long as they are linked in a pattern of actions which continues into the applicable limitations period."  *O'Connor v. City of Newark*, 440 F.3d 125,127 (3d Cir. 2006) (quoting *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101,105 (2002)).

Fatal to Plaintiff's argument is that the Amended Complaint is completely devoid of any act or conduct by Defendants within the limitations period that would constitute a cognizable Fourth Amendment claim.   However, assuming *arguendo* that a cognizable cause of action did exist within the applicable statute of limitations, the Court finds that the continuing violations doctrine still would not salvage Plaintiff's time-barred claims.  Each of the incidents alleged by Plaintiff arose from a discrete discriminatory act that should have triggered Plaintiff's awareness of his duty to assert his rights.  Thus, the Court finds that the continuing violations doctrine does not save Plaintiff's time barred claims.


C.     *Plaintiff's Proposed Second Amended Complaint and "Class-of-One" Allegations*

The Amended Complaint alleges only Fourth Amendment violations, yet in Paragraph 20(m) Plaintiff alludes to an equal protection violation.  Appearing to recognize this deficiency, Plaintiff has attached to his Brief in Opposition a proposed Second Amended Complaint, which specifically includes allegations under a "class-of-one" theory for equal protection.

When a motion to dismiss is granted in a civil rights case, a plaintiff is given leave to amend, unless the amendment would be futile.  The Court has examined the proposed Second Amended Complaint and finds that leave to amend would be futile, as Plaintiff has failed to satisfy the pleading requirements under a class-of-one theory.

When a plaintiff who alleges an equal protection claim does not aver membership in a class or group, that plaintiff is considered to be a "class-of-one."  *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  In justifying the recognition of a class-of-one equal protection cause of action, the Supreme Court noted that "the purpose of the Equal Protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Id.* at 564 (*quoting Sioux City Bridge Co. v. Dakota County, Neb.*, 260 U.S. 441, 445 (1923)).  The complaint must identify similarly situated individuals and allege that the plaintiff was treated differently.  *See Hill v. Borough of Kutztown,* 455 F.3d 225, 239 (3d Cir. 2006). *See also Mann v. Brenner*, 375 Fed.Appx. 232, 238–239 (3d Cir. 2010).  Moreover, courts within the Third Circuit have required that a plaintiff plead specific instances of differential treatment to overcome a motion to dismiss. *See Conklin v. Warrington Twp.*, 304 Fed.Appx. 115 (3d Cir. 2008) (litigant provided no specific instance(s) of defendant prothonotary handling any other litigant's documents differently or treating them differently otherwise); *Young v. New Sewickley Twp.*, 160 Fed.Appx. 263, 266 (3d Cir. 2005) (disgruntled police officer failed to provide any specific instance(s) of other police officer employees being treated in a dissimilar manner). *See also Perano v. Tilden Twp.*, No. 09–00754, 2010 WL 1462367, at **9–10 (E.D.  Pa. Apr. 12, 2010) (plaintiff failed to adequately demonstrate how mobile home developers were similarly situated to high end real estate

developers or commercial businesses in the region, to ultimately establish differential treatment).[7]

Lastly, once a plaintiff has established specific instances of differential treatment towards similarly situated individuals or entities, said plaintiff must adequately allege that there was no rational basis for the treatment. *See Cradle of Liberty Council, Inc. v. City of Phila.,* 2008 WL 4399025 (E. D. Pa. Sept. 25, 2008).

Here, Plaintiff asserts, in a vague and speculative manner, and again without indication of any specific Defendant's involvement, that he "believes, and therefore avers" that at the time he had requested the PSP's assistance, "other citizens" had requested the PSP's assistance for the investigation of standard police matters such as vandalism or theft, that those individuals received assistance, and that no rational basis existed for the "unidentified police officer or officers" refusal to investigate Plaintiff's complaints of vandalism and theft.

After reviewing the proposed Second Amended Complaint, the Court finds that it would be futile to grant Plaintiff leave to file the Second Amended Complaint as the purported class-of-one claim does not allege a <u>specific instance</u> of differential treatment with similarly situated individuals, particularly where the facts as alleged are not so obvious to conclude that Plaintiff was the subject of differential treatment. Even under the more lenient pleading standards for a class-of-one equal protection plaintiff, Plaintiff here has not alleged more than a "thread-bare recitation of the elements" needed to bring his claim. *Iqbal*, 129 S. Ct. at 1940.

---

[7] It is further noted that although the Third Circuit case of *Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008), held that a plaintiff was not required to identify actual instances of different treatment by a similarly situated individual at the pleading stage, the Second Circuit case on which *Phillips* relied (*DeMuria v. Hawkes*, 328 F.3d 704, 707 (2d Cir. 2003)), has since been superceded by *Ruston v. Skaneateles Town Bd.*, 610 F.3d 55 (2d Cir. N.Y. 2010). In *Ruston*, the Court of Appeals for the Second Circuit held that a general allegation of differential treatment that was sufficient to state a claim for a class-of-one plaintiff in *DeMuria* was insufficient in light of *Iqbal*.

Lastly, a review of the allegations raised in the proposed Second Amended Complaint contain nothing more than unsupported insinuations with regard to the purported non-existence of a rational basis for the allegedly different treatment.  Instead, Plaintiff summarily concludes in his allegations that "the failure of an unidentified officer or officers of the subject police department to investigate Plaintiff's complaints of vandalism and theft, constituted a violation of the Plaintiff's rights under the Fourteenth Amendment, since no rational basis existed for the refusal to investigate."  Proposed Second Amended Complaint, at ¶ 32.

For these reasons, the Court finds that allowing Plaintiff leave to amend would be futile, as Plaintiff has failed to satisfy the pleading requirements under a class-of-one theory.


V.      **Conclusion**

The essence of Plaintiff's claims is that Defendants continue to harass him.  However, in a somewhat similar case, the United States District Court for the District of Massachusetts found that continued harassment by police officers after an arrest, including repeatedly parking police cruisers outside of the plaintiffs' home and tailgating the cars of plaintiffs and their friends, did not create a cognizable claim under 42 U.S.C. § 1983.  *Sullivan v. Marshall*, 628 F. Supp. 1080, 1083 (D. Mass. 1985).  The court pointed out that "[w]hile the plaintiffs may have alleged a tort under state law, the commission of a tort by a person acting under the color of state law does not create liability [under § 1983] unless there is also a violation of the United States Constitution or a federal law  . . . . While it is true that harassment by police officers may impair the enjoyment of life in all respects, that is true of many torts with no constitutional implications."  *Id.*

Similarly, the Court finds that, although Plaintiff may have  a cognizable tort claim(s) under state law, the conduct of the PSP which is described in the Amended Complaint does not

violate any Fourth Amendment right for the purpose of sustaining a claim under § 1983.

Accordingly, the Motion to Dismiss Plaintiff's Complaint will be GRANTED.

An appropriate Order follows.

McVerry, J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **RICHARD E. MYERS, JR.,**      ) | |
|      ) | |
|      **Plaintiff,**      ) | |
|      ) | **02:11-cv-01107** |
|      **vs.**      ) | |
|      ) | |
| **BRIAN SHAFFER in his official and**      ) | |
| **individual capacities, BRIAN WOLFE in his**      ) | |
| **official and individual capacities,**      ) | |
| **BRADLEY SMAIL in his official**      ) | |
| **and individual capacities, DANIEL HERR in**      ) | |
| **his official and individual capacities,**      ) | |
| **JAMES DEPAOLO  in his official and**      ) | |
| **individual capacities, SAMUEL VICARI**      ) | |
| **in his official and individual capacities, and**      ) | |
| **ANTHONY AULICINO in his official**      ) | |
| **and individual capacities,**      ) | |
|      ) | |
|      **Defendants.**      ) | |

## ORDER OF THE COURT

     **AND NOW**, this 21st day of August, 2012, for the reasons set forth in the foregoing

Memorandum Opinion, it is hereby **ORDERED, ADJUDGED and DECREED** that the Motion

to Dismiss filed by Defendants is **GRANTED**.

     The Clerk of Court shall docket this case closed.


               BY THE COURT:

               s/ Terrence F. McVerry
               United States District Court Judge

cc:               Jonathan M. Gesk, Esquire
Wayman, Irvin & McAuley
jgesk@waymanlaw.com

Joel S. Sansone, Esquire
Scanlon & Sansone
Email: joelsansone03@msn.com

Robert A. Willig,
Senior Deputy Attorney General
Email: rwillig@attorneygeneral.gov